UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


SHENTELL GUILLOT                                    CIVIL ACTION

v.                                                  NO. 17-6117

EDGARDO CASTRO, ET AL.                              SECTION "F"


<u>ORDER AND REASONS</u>

Before the Court is the defendants' motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), or in the alternative, motion for summary judgment. For the following reasons, the motion is GRANTED.

**Background**

Police officers arrested a sex worker after an undercover officer had solicited her services. She alleges that the officers assaulted her and violated her Fourth amendment rights during the arrest. This litigation follows.

Shentell Guillot met a man online. She was soliciting her services as a sex worker on a site dedicated to such activities. Guillot spoke to the man, Detective Castro, for several days on the phone. She was unaware that Castro was a police officer. They agreed to meet at Guillot's home on June 24, 2016, where Castro would receive one-half hour of Guillot's services at the rate of $150. When Castro arrived at Guillot's home, she greeted him at her front door, dressed only in a towel, and was smoking marijuana.

Castro gave her $150 in authorized vice funds. Shortly thereafter, Detectives Abadie, Meetze, and Olivier entered Guillot's residence, and searched her home. Guillot was arrested for, and later charged with, prostitution in violation of La. R.S. 14:82, and possession of marijuana in violation of La. R.S. 40:966(C).[1] She pled guilty to prostitution and no contest to possession of marijuana on October 12, 2016.

Guillot sued Detectives Castro, Meetz, and Abadie on June 23, 2017 under 42 U.S.C. § 1983. In her complaint, she states that when she greeted Castro at the door in a towel, she excused herself to go get dressed. According to Guillot, he asked her to see what was underneath the towel, and squeezed her breast without permission. When the other officers entered her home, they searched her room without her permission. She states that they made her remove her towel so she was completely naked and watched her get dressed before they took her to the police station, despite her requests that they call a female officer. She also states that she was not read her Miranda rights until after she was handcuffed. Guillot alleges that she was sexually assaulted, that the police effectuated an illegal search and seizure, forcibly entered her home, failed to inform her of her Miranda rights, and watched her

---

[1] Guillot was also arrested for crimes against nature by solicitation in violation of La. R.S. 14:89.2, but the District Attorney did not charge her for this crime.

2

get dressed naked. She alleges that as a result, she has experienced post-traumatic stress disorder, extreme depression, and panic attacks, and seeks $2 million in damages.

The defendants moved for a judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), and in the alternative for summary judgment, pursuant to Rule 56, on June 12, 2018. Local Rule 7.5 of the Eastern District of Louisiana requires that memoranda in opposition to a motion be filed eight days prior to the noticed submission date, which was June 27, 2018. The plaintiff failed to submit an opposition, but because she is a *pro se* claimant, the Court continued the submission date, and ordered her to submit a memorandum in opposition by July 17, 2018. The plaintiff opposed the motion on July 16, 2018.

I.

Federal Rule of Civil Procedure 12(c) permits any party to move for a judgment on the pleadings, provided the motion is made early enough to avoid delaying trial. A court may grant a Rule 12(c) motion only if the pleadings evince no disputes of genuine material fact and questions of law alone remain. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002)(citations omitted). Courts should thus adhere to the same standard in reviewing a 12(c) motion as they do in reviewing motions to dismiss under Rule 12(b)(6), accepting all well-pleaded

3

facts as true and drawing all factual inferences in favor of the non-movant. See id. at 313 n.8; Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)); Doe v. Myspace, Inc., 528 F.3d 413, 418 (5th Cir. 2008); 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2004).

"'[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009))(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of

entitlement to relief." Id. at 679 (internal quotations omitted) (citing Twombly, 550 U.S. at 557).

Finally, just like when it reviews a motion to dismiss under Rule 12(b)(6), when reviewing a Rule 12(c) motion, "a district court 'must consider the [pleadings in their] entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

II.

Section 1983, which was enacted pursuant to Congress's authority to enforce the Fourteenth Amendment, prohibits interference with federal rights under color of state law. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). It creates a private right of action for violations of federally-secured rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...shall be liable to the party injured....

5

42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must satisfy three elements:

> (1) deprivation of a right secured by the U.S. Constitution or federal law;
> (2) that occurred under color of state law, and
> (3) was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004)(citation omitted).

The plaintiff alleges that the defendants violated her constitutional rights by failing to timely inform her of her Miranda rights, by requiring that she get dressed in front of them, even though she was naked, by arresting her and searching her home without a warrant, and by touching her breast without her consent. The Court will address each claim in turn.

A.

The plaintiff contends that the officers violated a constitutional right when they failed to inform her of her Miranda rights prior to her arrest. She does not allege that she made any incriminating statements before or during her arrest. The Fifth Amendment provides the "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. To safeguard this right against self-incrimination, the United States Supreme Court has created certain "prophylactic measures", such as the Miranda exclusionary rule, which precludes "the admission into evidence in a criminal case of confessions

6

obtained through coercive custodial questioning." Chavez v. Martinez, 538 U.S. 760, 773 (2003). Violations of the rule "do not violate the constitutional rights of any person." Id. Instead, "[a] constitutional violation occurs, and hence, a section 1983 claim exists, only where an individual is compelled to be a witness against himself in a criminal case." Golla v. City of Bossier City, 687 F. Supp. 2d 645, 661 (W.D. La. 2009). Even if the defendants failed to read the plaintiff her Miranda rights, the plaintiff did not make any statements that caused her to be a witness against herself. Accordingly, she does not have an actionable claim under Section 1983 against the defendants for failure to read her Miranda rights.

B.

The plaintiff alleges that the defendants violated her rights[2] when they required her to get dressed in front of them. The plaintiff was dressed in a towel when the officers entered her home to place her under arrest. She was naked under the towel. They required her to sit on her couch while they conducted a search of her room, and would not permit her to get up. When she needed to remove the towel to put on the clothes before she could be taken to the police station, she was not permitted to get dressed in private. After she was dressed, she was placed in handcuffs.

---

[2] The plaintiff never identifies any specific rights that were violated.

7

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. Amend. IV. A seizure occurs when an officer "in some way restrain[s] the liberty of a citizen" through "means of physical force or show of authority." Terry v. Ohio, 392 U.S. 1, 20 n.16 (1968). In other words, a person has been "seized" if a "reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). Because the officers required her to sit on the couch and would not let her leave, she was seized, and remained under seizure while she got dressed and was subsequently handcuffed.

An arrestee has "reduced privacy interests upon being taken into police custody." Riley v. California, 134 S. Ct. 2473, 2488 (2014)(citing United States v. Robinson, 414 U.S. 218, 237, 94 S. Ct. 260 (Powell, J., concurring) ("[A]n individual lawfully subjected to a custodial arrest retains no significant Fourth Amendment interest in the privacy of his person.")). The plaintiff is not entitled to have a moment alone while she is arrested so she can put on clothes in privacy. A seizure, by definition, means that the detainee is not free to leave. The defendants did not require that the plaintiff strip naked, or perform a search on her or otherwise touch her while she was naked. She was already undressed when they entered her home, and her only option to get dressed was to reveal herself to the officers. Under the circumstances, this particular invasion of privacy was warranted,

and does not violate her Fourth Amendment right. Her Section 1983 claim for the defendant's refusal to allow her to leave their presence while she was arrested is not actionable.[3]

C.

The defendants contend that the plaintiff's claims for unlawful arrest and search and seizure are barred by Heck v. Humphrey.

In Heck v. Humphrey, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-87 (1994). This procedural bar applies even if the Section 1983 plaintiff "is no longer in custody and thus cannot file a habeas petition." Randell v. Johnson, 227 F.3d 300 (5th Cir. 2000). The Court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [her] conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction

---

[3] As an observation, the Court merely notes that good taste might suggest the officers could have waited for a female officer to assist them.

9

or sentence has already been invalidated." Heck, 512 U.S. at 487. For the purposes of Heck, the entry of a no-contest plea is considered a conviction on the offense pled. See Ballard v. Burton, 444 F.3d 391, 396 n.3 (5th Cir. 2006); Watson v. New Orleans City, 276 F.3d 46, 1, 4 (5th Cir. 2001)(unpublished).

Guillot contends that the defendants violated her constitutional rights by entering her home, arresting her, and conducting a search of her room without a warrant. Allegations of an illegal search and seizure, if accurate, would necessarily imply the invalidity of her convictions for prostitution and marijuana possession. Accordingly, those claims are barred by Heck. Johnson v. Kosciusko Police Dept., 412 Fed. Appx. 730, 731 (5th Cir. 2011)(unpublished)(holding that Heck barred the petitioner's claim that no search warrant was issued before his arrest because "it necessarily challenges the validity of the convictions for which he is currently incarcerated.") Cougle v. County of DeSoto, 303 Fed. Appx. 164, 165 (5th Cir. 2008)(unpublished)(holding that the allegations that the search and arrest were effectuated without probable cause would "necessarily imply the invalidity" of the revocation of probation and is barred by Heck).

D.

i.

The defendants contend that they are entitled to qualified immunity for the plaintiff's claim that Detective Castro squeezed

her breast while he was undercover.  When a plaintiff seeks money damages from government officials for alleged violations of constitutional or statutory rights, officials sued in their individual capacities may invoke the defense of qualified immunity.  Because it is an immunity from suit and not a defense to liability, courts are advised to resolve the issue "at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam).  Once the defense of qualified immunity is "properly raised," the burden of negating the defense shifts to the plaintiff.  See Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009)(citation omitted); Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009)("To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'"); see also Pierce v. Smith, 117 F.3d 866, 872 (5th Cir. 1997)("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.").

"Qualified immunity shields government officials from civil damages liability," the U.S. Supreme Court has reiterated, "unless the official violated a statutory or constitutional right that was clearly established that the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, 2093 (2012)(citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011));

11

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)(This doctrine protects government officials against individual civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(noting that "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008)(citations omitted); see also Bazan v. Hidalgo County, 246 F.3d 481, 488 (5th Cir. 2001)("even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity")(citation omitted); see also Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995)(observing that "[q]ualified immunity represents the norm" and "is designed to shield from civil liability all but the plainly incompetent or those who violate the law.").

Put simply, a public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the official's conduct violates a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. al-Kidd, 563 U.S. at 735 (citation omitted).[4] Although the Supreme Court has left to the district court's discretion the sequence for undertaking these two inquiries, the Supreme Court has increasingly indicated a preference for first considering whether a purported right was clearly established by prior case law "without resolving the often more difficult question whether the purported right exists at all." See al-Kidd, 563 U.S. at 735 ("Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"); see also Reichle, 132 S.Ct. at 2093 ("This approach comports with our usual reluctance to decide constitutional questions unnecessarily."); see also Camreta

---

[4] In resolving a government official's qualified immunity defense, courts have traditionally applied the two-prong process articulated in Siegert v. Gilley, 500 U.S. 226 (1991) and confirmed by the Supreme Court again in Saucier v. Katz, 533 U.S. 194 (2001). First, the Court must determine whether the plaintiffs have shown a violation of a constitutional right. Id. at 201. The second inquiry requires the Court to consider "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009)(holding that the sequence identified in Saucier is not mandatory; courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first).

13

v. Greene, 563 U.S. 692, 705 (2011)(observing that "our usual adjudicatory rules suggest that a court *should* forbear resolving this issue")(emphasis in original); see also Pearson, 555 U.S. at 238-39 (listing circumstances in which courts might be best served to bypass the first step of the Saucier process, such as "when qualified immunity is asserted at the pleadings stage, the precise factual basis for the plaintiff's claim or claims [is] hard to identify").

"A right may be clearly established without 'a case directly on point,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Hanks v. Rogers, 853 F.3d 738, 746-47 (5th Cir. 2017) (quoting White v. Pauly, 137 S.Ct. 548, 551 (2017)). "[C]learly established law must be 'particularized' to the facts of the case [and] should not be defined 'at a high level of generality.'" Id. (citations omitted). "In other words," the Fifth Circuit recently explained, "outside of an obvious case, the law is only clearly established if a prior case exists where an officer acting under similar circumstances ...was held to have violated the Fourth Amendment." Id. (citation and internal quotation omitted).

ii.

The Court is aware of two theories under which a petitioner alleging that she was subject to inappropriate sexual touching could obtain relief: (1) the right to be free from excessive force

14

under the Fourth Amendment and (2) the right to substantive due process under the Fourteenth Amendment.[5] The Court turns to the second prong of the qualified immunity inquiry to determine if either cause of action is "clearly established" under these circumstances.

To establish that Detective Castro violated plaintiff's constitutional right to be free from excessive force, plaintiff must show: "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." Glen v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001). Although a showing of "significant injury" is no longer required in the context of an excessive force claim, the Fifth Circuit requires a plaintiff to have "suffered at least some form of injury." Williams v. Bramer, 180 F.3d 699, 700 (5th Cir. 1999). Further, the injury must be "more than a de minimis injury" and must be evaluated in the context in which the force was deployed. Id. To determine whether a use of force was reasonable, the Court looks to the totality of the circumstances, giving "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

---

[5] The plaintiff did not address any legal theories or reference any law in her handwritten complaint or brief opposition.

resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1983).

The defendants contend that the plaintiff was not injured when Detective Castro grabbed her breast, and therefore she cannot state an excessive force claim. The plaintiff contends that she has experienced PTSD and severe depression as a result from the accident. Courts have held that mental health issues incurred as a result of sexual assault is sufficient to establish an injury. See Cerda v. Billingsley, No. 09-816, 2012 WL 13034113, at *3 (W.D. Tex. Jan. 3, 2012). However, this cause of action relates to force used during an arrest. It is not disputed that Castro's alleged assault occurred when he was still undercover, before the other officers arrived. See Rogers v. City of Little Rock, 152 F.3d 790, 795 (noting that sexual assault by an officer does "not fit the mold of a typical fourth amendment search and seizure case"). Moreover, the Court has not identified any Fifth Circuit or Texas, Louisiana, or Mississippi district court case that finds that inappropriate sexual touching constitutes excessive force,[6] or a case with analogous facts.[7] Although it is difficult to imagine

---

[6] The court distinguished the facts alleged in this case, and cases where the plaintiff alleged rape. See Cerda v. Billingsley, No. 09-816, 2012 WL 13034113, at *3 (W.D. Tex. Jan. 3, 2012).

[7] The district court for the District of Columbia has held that an officer was not entitled to qualified immunity when the plaintiff alleged that he repeatedly fondled his genitals during a search incident to arrest. Dickey v. United States, 174 F.Supp.3d 366, 371-71 (D.D.C. 2016). The court determined that "[a] search

16

any circumstance where grabbing a soon-to-be detainee's breast would be appropriate, unwanted sexual touching preceding an arrest is not a clearly established part of the right to be free from excessive force.[8]

In the alternative, the Supreme Court has recognized a substantive due process right to bodily integrity. Washington v. Glucksberg, 521 U.S. 702, 720 (1997). Although the Supreme Court has not considered the liability of a state actor under Section 1983 for a sexual assault, "a number of circuit courts have found due process violations when state actors have inflicted sexual abuse on individuals." Rogers, 152 F.3d at 195; Jones v. Wellham, 104 F.3d 620, 628 (4th Cir. 1997); Doe v. Taylor Indep. School Dist., 15 F.3d 443, 451 (5th Cir. 1994)(holding that a school employee's physical sexual abused violates a student's due process right in bodily integrity."). However, the "threshold question in

---

incident to arrest that includes fondling alleged to constitute sexual assault is 'extreme' and 'patently abusive,'" and is a "violation of that person's clearly established constitutional rights." Although both Dickey and this case include inappropriate sexual touching, the touching in Dickey is distinguishable because it occurred during a search incident to arrest, where the alleged touching here occurred before the arrest (and before the plaintiff knew there was an officer present).

[8] Even if the right to be free of excessive force clearly contained the right to be free of inappropriate sexual touching and the defendants were not entitled to qualified immunity, Guillot would still not be entitled to relief on this basis because her Section 1983 claim of excessive force would be precluded by Heck. Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996). She was being investigated by an undercover police officer for prostitution.

17

a due process challenge to abusive conduct by a state actor is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Rogers, 152 F.3d at 797 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 n.8 (1998)). Some acts of sexual assault by a state actor, like rape or child molestation, are consistently considered so outrageous and egregious that they clearly violate the petitioner's right to bodily integrity. See id., Doe, 15 F.3d at 451. The allegations against Detective Castro, if true, are base and unfitting of any state official. But courts have not uniformly held that one-time, brief, inappropriate sexual touching that is not accompanied by a threat or showing of authority is a violation of one's substantive due process rights.[9] See Decker v. Tinnel, No. 04-227, 2005 WL 3501705, at *8 (N.D. Ind. Dec. 20, 2005)(holding that unwanted kissing and groping from an police officer that lasted a few seconds (but was repeated during a car ride) and not accompanied by force was distinct from more egregious assaults, like rape and child molestation, and does not rise to the level of a due process violation); but see Hawkins v. Holloway, 316 F.3d 777, 784 (8th Cir. 2003)(finding that the sheriff's repeated intentional touching of a his employee's breast

---

[9] Again the Court notes that Castro's conduct occurred during an undercover prostitution investigation. Money was exchanged in return for sexual favors.

18

over an extended period of time when he frequently threatened others was a violation of her bodily integrity sufficient to support a substantive due process claim). Although there may be an actionable right under Section 1983, it is not so *clearly established* as to preclude the application of governmental immunity. Accordingly, the defendants are entitled to governmental immunity, and the plaintiff's claim is barred.

Accordingly, IT IS ORDERED: that the defendants' motion for judgment on the pleadings is GRANTED.

New Orleans, Louisiana, July 19, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE